**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL J. CORBETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 01 C 7421 |
| | ) |
| INSPECTOR BIGGS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss for failure to state a claim. For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

*Pro se* plaintiff Michael J. Corbett has brought this 42 U.S.C. § 1983 action alleging a litany of federal civil rights and state tort claims against nineteen defendants. The following facts are drawn from the Fifth Amended Complaint ("the complaint") and are taken as true for present purposes. On August 14, 2001, Corbett was standing in the doorway of his first-floor apartment talking with his next-door neighbor, Joel Flores. As the two men talked, a van pulled up approximately 30 feet away. Three police officers jumped from the van and ran towards Corbett and Flores with their guns drawn. One officer

yelled "get down on the ground"; another yelled "get in the house"; the third officer may have yelled "freeze." One of the officers, later identified as City of Oswego police officer Chris Biggs,[1] ran directly at Corbett and "pushed" or "tackled" him to the floor inside his apartment. Biggs, now on top of Corbett, yelled "get your hands up," followed by, "is there anybody else in your apartment?" Corbett said "no." Biggs then stood up, pointed his gun at Corbett, and told him to keep his hands in the air and not to move. Biggs searched the bedroom and bathroom for other people. Biggs returned to Corbett, again pointed his gun at him, and said "stay just like that, keep your hands in the air, I will be right back." Biggs then left the apartment. A minute or so later, he reappeared, offered Corbett his hand and pulled him off the ground. Biggs apologized to Corbett and left the apartment, closing the door behind him. Corbett later learned that the officers were executing a warrant to search Flores's apartment.

Shortly thereafter, Corbett, "shaken up" and now suffering from a "stiff back," opened his door and told Biggs that he wanted to file a police report. Biggs replied "for what?" Corbett said "for pushing [me] flat on [my] back." Biggs

---

[1] The correct names and titles of many of the defendants are taken from their motion papers.

responded "I never pushed you." At that point, another Oswego police officer identified as John Price walked up to the doorway, motioned Biggs away, and asked Corbett "what was up." Corbett told Price that he wanted to file a police report because Biggs pushed him to the ground. Price said "I didn't see that," to which Corbett mumbled "crooked cops." Price raised his voice and asked "what did you say?" Corbett replied by asking Price if he had ever "testilied in court." Price answered "yes, I have testified in court." Corbett said "no, have you ever *testilied* in court?" Price said "no." Corbett then told Price that Biggs had denied pushing him to the ground, and that he wanted a report filled out. Price responded "I am not going to fill one out." So Corbett asked Price how he could file a report, and Price told him to call the Kendall County Sheriff's Office. Corbett asked him if he had the telephone number and Price said "call 911." Corbett replied "I don't need another cop running around here like there's an emergency going on." Price told Corbett to close his door, which he did.

Corbett found the telephone number, called the Sheriff's Office and was told that an officer would be sent over. About a half hour later, Corbett opened his door. Biggs, still standing nearby, told him to shut it. Corbett responded that he was waiting for a Kendall County police officer and that until he

arrived, Biggs "was not to go anywhere" because Corbett wanted to file battery charges against him. Just then, Kendall County deputy sheriff Kevin McHugh arrived and he and Corbett went into his apartment to talk. Corbett began to tell McHugh what had happened, but McHugh "kept interrupting" and "cross examining" him. McHugh then said that he needed to speak with "the officer in question," but first he wanted Corbett to identify "the officer [he] was complaining about." McHugh stepped outside and asked Biggs to change his clothes (presumably to ensure that Corbett's identification would not be based on Biggs's clothing). Biggs went to the trunk of a car and started to remove some of his clothes. Corbett then said there was no need for Biggs to change clothes because he could identify him "by his piercings."

Sometime later, Corbett opened his door "to find out what was going on." McHugh, along with Kendall County deputy sheriff Jason Flanders and City of Yorkville police officer Lawrence Hilt, walked over and entered his apartment. McHugh told Corbett that "based upon [his] statement, [he] had to arrest [him]." McHugh handcuffed Corbett and drove him to the Kendall County police station where he was held overnight. At the station, Biggs signed an arrest complaint stating the following:

> [Corbett] knowingly obstructed the performance
> of inspector C. Biggs of an authorized act
> within his official capacity, being the service

> of a search warrant, knowing inspector Biggs
> to be a peace officer, engaged in the execution
> of his official duties, in that Corbett
> repeatedly disobeyed inspector Biggs's orders
> to stand back and enter his motel room, while
> Corbett was in close proximity and distracting
> Biggs from detaining a suspect.

(Compl., ¶ 43.) Corbett alleges that Kendall County deputy sheriff Robert Wollwert, Oswego police officer L. Stefanski and Illinois state police officer Steven Kline were also "present for the search warrant."[2]

Following a jury trial in the Circuit Court of Kendall County, Corbett was convicted of obstructing a peace officer in violation of 720 ILCS § 5/31-1 and served 30 days in prison.[3] The Illinois Appellate Court affirmed the conviction. The complaint alleges that Biggs, Kline, Price and McHugh gave false testimony at Corbett's trial; that Kendall County prosecutors Jordan Gallagher and Brenda Karales "lied" to the jury; that Vicki Cohen, the court reporter at his trial, altered the trial transcript "to discourage [Corbett] from appealing"; that Judge Wojtecki, who presided over the trial, improperly refused to

---

[2]Each of the officers present on August 14, 2001 were members of a multi-jurisdictional law enforcement task force known as the Kendall County Cooperative Police Assistance Team ("CPAT").

[3]A person commits the offense of resisting or obstructing a peace officer when he "knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity." 720 ILCS § 5/31-1.

admit evidence and give jury instructions; and that unidentified officer defendants altered their police reports prior to trial.

Corbett also claims that Tim McCann, Kendall County State's Attorney, and Sam Nolen and Larry Trent, current and former directors of the Illinois State police, refused to take action in response to the officers' perjury and evidence tampering. Finally, Corbett asserts that McCann, Nolen, Oswego Police Chief Bob Wunsch, Yorkville Police Chief Harold Martin, Illinois State Police District 5 Captain Kevin Shaughnessy and Kendall County Sheriff Richard Randall failed to train, supervise and discipline the officer defendants.

On these alleged facts, Corbett has brought a seventeen-count complaint alleging the following: a 42 U.S.C. § 1983 excessive force claim against Biggs (Count I); a state law battery claim against Biggs (Count II); a state law criminal trespass claim against Biggs (Count III); a section 1983 "unlawful restraint" claim against Biggs, McHugh, Hilt, Kline, Price, Wollwert, Stefanski, and Flanders for his detention on August 14 and 15, 2001 following his arrest (Count IV); another section 1983 unlawful restraint claim against Biggs, McHugh, Hilt, Kline, Price, Wollwert, Stefanski, Flanders, Karales, Gallagher, Cohen and Judge Wojtecki for his 30 day incarceration (Count V); a section 1983 conspiracy claim against Biggs, McHugh,

Stefanski, Hilt, Kline, Price, Wollwert, Flanders, Karales, Gallagher, Cohen, McCann, Trent and Judge Wojtecki for "covering up" Biggs's conduct (Count VI); respondeat superior and indemnification claims against Kendall County and other CPAT jurisdictions for defendants' conduct alleged in Counts I through VI (Counts VII and VIII); a section 1983 failure to train claim against McCann, Wunsch, Martin, Randall, Trent, Nolen and Shaughnessy for defendants' alleged conduct in Counts I through VI (Count IX); respondeat superior and indemnification claims against Kendall County and other CPAT jurisdictions on the failure to train claim (Counts X and XI); a section 1983 claim for denial of a fair trial against Judge Wojtecki, Gallagher, Karales, McCann and Cohen (Count XII); respondeat superior and indemnification claims against Kendall County and other CPAT jurisdictions on the denial of a fair trial claim (Counts XIII and XIV); a section 1983 conspiracy claim against Judge Wojtecki, Gallagher, Karales, McCann and Cohen for conspiring to deny a fair trial (Count XV); and respondeat superior and indemnification claims against Kendall County on the conspiracy to deny a fair trial claim (Counts XVI and XVII). Corbett asserts his claims against all defendants in their individual capacities, and his claims against supervisor defendants McCann, Wunsch, Martin, Randall, Trent, Nolen and Shaughnessy in their

official capacities as well.[4] Corbett seeks compensatory and punitive damages.

Defendants have filed nine separate motions to dismiss, and defendants McHugh, Flanders and Wollwert have filed, in the alternative, a joint motion for summary judgment.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d

---

[4]An individual named "Rizo" is also listed as a defendant in Count IX. This appears to be inadvertent. A "Theodore Rizo" was named in the caption to the Fourth Amended Complaint, but was dropped from the caption in the present complaint. Regardless, it does not appear from the docket that Rizo has been served with process or waived such service, so we do not consider him a defendant. In addition, the docket does not indicate that Shaughnessy has been served or waived service, so he too is not a defendant.

354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir.), <u>cert.</u> <u>denied</u>, 519 U.S. 1008 (1996).

Moreover, the court has a special responsibility to construe a *pro se* complaint liberally and to "take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." <u>Donald v. Cook County Sheriff's Dep't</u>, 95 F.3d 548, 555 (7th Cir. 1996); <u>see</u> <u>also</u> <u>Castillo v. Cook County Mail Room Dep't</u>, 990 F.2d 304, 307 (7th Cir. 1993) (a *pro se* complaint, "however inartfully pleaded," should be liberally construed). Accordingly, when reviewing a *pro se* complaint, the court must employ standards less stringent than if the complaint had been drafted by counsel. <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1427 (7th Cir. 1996); <u>Curtis v. Bembenek</u>, 48 F.3d 281, 283 (7th Cir. 1995) (<u>both</u> <u>citing</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 52 (1972)).

Defendants have presented a host of arguments for the dismissal of each of the complaint's seventeen counts. We address each count in turn.

### Count I — § 1983 Excessive Force

Corbett claims that "the force used by Biggs . . . was unreasonable and absolutely unjustified," and as a result, he "suffered pain and injury." (Compl., ¶¶ 62, 63.) When a claim

of excessive force arises in the context of an arrest, the court evaluates the officer's use of force according to the reasonableness standard of the Fourth Amendment. See Morfin v. City of East Chicago, 349 F.3d 989, 1004-05 (7th Cir. 2003) (citation omitted). The determination of whether the force was reasonable requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. The court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The court should consider these circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Scott v. Edinburg, 346 F.3d 752, 756 (7th Cir. 2003) (citation omitted).

Biggs's first argument is that Corbett's state court conviction for obstructing a peace officer bars him from asserting an excessive force claim under the doctrine of collateral estoppel. State court judgments have collateral estoppel effect in subsequent section 1983 litigation, see Allen v. McCurry, 449 U.S. 90, 95 (1980), and federal courts look to

the law of the state where the judgment was rendered to determine
its preclusive effect.  See Brokaw v. Weaver, 305 F.3d 660, 669
(7th Cir. 2002).  Under Illinois law, collateral estoppel will
preclude relitigation of issues in a subsequent proceeding when:
"(1) the party against whom the doctrine is asserted was a party
to the earlier proceeding; (2) the issue was actually litigated
and decided on the merits; (3) the resolution of the particular
issue was necessary to the result; and (4) the issues are
identical."  Kraushaar v. Flanigan, 45 F.3d 1040, 1050 (7th Cir.
1995) (citation omitted).

To determine the collateral effect, if any, of Corbett's
conviction on his excessive force claim, we must determine what
was actually decided in the state courts.  The state was required
to prove that Corbett "knowingly resist[ed] or obstruct[ed] the
performance by one known to [him] to be a peace officer . . . of
any authorized act within his official capacity."  720 ILCS §
5/31-1.  The only record of the state court proceedings provided
by Biggs is the opinion of the appellate court affirming the
conviction.[5]  In rejecting Corbett's sufficiency of the evidence
argument, the appellate court summarized the state's burden and

---

[5]The court may take judicial notice of matters of public record
without converting Biggs's motion to dismiss into one for summary
judgment.  See Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir.
1994).

the evidence supporting the conviction:

> [T]he State was required to prove that (1)
> Inspector Biggs was a peace officer
> performing an authorized act within his
> official capacity, and (2) defendant
> engaged in an act of physical resistance
> that impeded, hindered, interrupted,
> prevented, or delayed Biggs in the
> performance of his duties.  See People v.
> Hilgenberg, 223 Ill.App.3d 286, 289
> (1991).  A review of the record reveals
> ample evidence to sustain defendant's
> conviction.  There is no dispute that
> defendant was aware that Biggs was a
> peace officer.  There is also no dispute
> that Biggs was performing an authorized
> act, namely, executing a search warrant.
> Defendant insists that there was
> insufficient proof that he engaged in a
> physical act that impeded or interrupted
> Biggs in the performance of his duties.
> Biggs testified that while he was
> attempting to detain Flores, the subject
> of the search warrant, defendant stood
> approximately six inches behind him and
> ignored all orders to return to his room.
> Because Biggs did not feel safe with
> defendant directly behind him and because
> defendant would not leave voluntarily,
> Biggs had to leave Flores undetained to
> attend to defendant.  Biggs placed his
> hand on defendant's chest and walked him
> backwards toward his room.  According to
> Biggs, defendant leaned forward.  Biggs
> continued to push defendant backwards and
> ultimately fell on top of him.  Before
> Biggs left defendant's apartment, he
> instructed defendant to stay there.
> Defendant, however, opened and closed
> his door several times, interrupting the
> officers while they were executing the
> search warrant and handcuffing Flores.
> The above evidence was sufficient to show
> that defendant committed the offense of

> obstructing a peace officer.  His actions
> went beyond merely ignoring the officers'
> orders.  He committed a physical act that
> impeded, hindered, delayed and obstructed
> Biggs in the performance of his duties by
> leaning forward into Biggs rather than
> going willingly as Biggs moved him into
> his room.  Although defendant offered a
> different version of events, the jury
> evidently did not find him credible.

(Biggs's Mtn. Dismiss, Ex. B, <u>People v. Corbett</u>, No. 2-02-1298

(Ill. App. Ct. May 13, 2004).)  Nothing in the state court

opinion indicates that the trial court decided that Biggs did not

use excessive force in detaining Corbett.  And we do not, as

Biggs appears to argue, read such a finding into the record

merely because Corbett was convicted.  There is no

incompatibility between a finding that Corbett obstructed Biggs

and a finding that Biggs used excessive force against Corbett.

<u>See</u> <u>Robinson v. Doe</u>, 272 F.3d 921, 923 (7th Cir. 2001) ("Police

might well use excessive force in effecting a perfectly lawful

arrest.")  As far as we know, the jury returned a guilty verdict

without ever considering whether Biggs used excessive force.[6]

---

[6]We recognize that Biggs's trial testimony is at odds with the version of events set out in the complaint.  One glaring example is that while Corbett contends that Biggs "pushed" or "tackled" him into his apartment immediately after jumping from the van, Biggs testified that he pushed Corbett only after he refused orders to return to his apartment.  Of course, the fact that Corbett was convicted does not necessarily mean that the jury believed all of Biggs's testimony, or that it discredited the entirety of Corbett's testimony.  In any event, neither version precludes a finding of excessive force.

Accordingly, collateral estoppel does not bar Corbett's excessive force claim.

Biggs also contends that Corbett fails to state a claim for excessive force because Biggs "was acting reasonably." This is an argument on the merits and premature on a motion to dismiss. Corbett alleges that he was "tackled to the ground," "with Biggs on top of [him]," with his gun drawn. Because it is possible that Corbett may be able to prove a set of facts consistent with these allegations that would make out a claim for excessive force, he has stated a claim.

### Count II — State Law Battery

In Count II, Corbett alleges a state law claim for battery under the same facts averred in Count I. Under Illinois law, "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS § 5/12-3(a). Biggs seeks to dismiss this count on grounds of collateral estoppel and failure to state a claim. As with the excessive force claim, Biggs has not demonstrated that the issue of whether he committed a battery was decided in the state courts, and a conviction for obstruction does not preordain the answer. Biggs's failure to state a claim argument - that he "was

legally justified in his actions" - simply begs the question, and, once again, goes to the merits.  Whether Corbett can *prove* his allegations awaits further development of the record, but for now, he has stated a cognizable claim for battery.

### Count III — State Law Criminal Trespass

Count III alleges that "the forcible entry of the plaintiff's apartment by Biggs without the plaintiff's permission was a criminal trespass prohibited under State Law."  (Compl., ¶ 71.)  "A person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence . . . ."  720 ILCS § 5/19-4(a)(1).  Biggs's sole argument for dismissing this claim is his contention that he "was acting within his authority in the execution of a warrant when he ended up in Plaintiff's apartment."  Like the arguments that he "was acting reasonably" or "was legally justified in his actions," whether Biggs was "acting within his authority," is a matter of proof, not pleading, and is not ripe for adjudication on a motion to dismiss.  Count III will stand.

### Counts IV and V — § 1983 False Arrest, False Imprisonment and Malicious Prosecution

Count IV, titled "unlawful restraint," relates to Corbett's detention on August 14 and 15, 2001 following his arrest and alleges that McHugh arrested Corbett without probable

cause and based on false accusations; that Biggs signed the arrest complaint without probable cause and initiated the criminal proceedings maliciously; and that Biggs, McHugh, Hilt, Kline, Price, Wollwert, Stefanski and Flanders made accusations of criminal activity without probable cause, made false statements to prosecutors and fabricated evidence. Count V, also titled "unlawful restraint," relates to Corbett's 30 day incarceration and contains allegations identical to Count IV.[7]

Defendants claim that the "unlawful restraint" counts are collaterally barred by Corbett's criminal conviction. We construe these counts broadly as raising claims for false arrest, false imprisonment and malicious prosecution. Essential to each of these claims is proof that the officers acted without probable cause, that is, without reasonable grounds for believing that Corbett committed a criminal offense. See Jones by Jones v. Webb, 45 F.3d 178, 181 (7th Cir. 1995); Schertz v. Waupoca County, 875 F.2d 578, 582 (7th Cir. 1989).

If the state court decided that the officers had probable cause to arrest Corbett, his claims will be barred by collateral estoppel. See Kraushaar, 45 F.3d at 1050. It does not appear

---

[7]Count V also alleges that Karales "lied" to the court, that Cohen altered the trial transcript, and that Judge Wojtecki and Gallagher "violated Plaintiff's right to a fair trial." These same allegations reappear in Count XII and will be discussed below.

that the issue of probable cause was raised in the state court proceedings. Nonetheless, unlike the absence of excessive force, we *can* infer the existence of probable cause from the fact of Corbett's conviction. Generally speaking, probable cause and guilt are two different things. The former involves whether an officer has sufficient information *at the time of the arrest* to believe a person has committed a crime; the latter involves whether there is sufficient evidence *at the time of the conviction* to demonstrate a defendant's guilt beyond a reasonable doubt. Therefore, that a jury ultimately finds sufficient evidence for a conviction does not necessarily mean it would find probable cause for the arrest in the first place. See Lang v. City of Round Lake Park, 87 F.Supp.2d 836, 843 (N.D. Ill. 2000). For instance, it is not uncommon for authorities to uncover evidence necessary for a conviction only after a suspect has been arrested.

In some instances, however, proof of guilt and proof of probable cause are one in the same. In Currier v. Baldridge, 914 F.2d 993 (7th Cir. 1990), the plaintiff brought a section 1983 false arrest claim arising out of an incident that resulted in a state court conviction for disorderly conduct. Because the conviction was supported only by the testimony of the arresting officer, there was no difference between the evidence used to

determine probable cause and the evidence used to convict.  In such a case, "[t]he conviction supports the arrest: a plaintiff's previous conviction collaterally estops the plaintiff from reasserting a lack of probable cause." Id. at 996.

Currier informs our analysis here.  The state appellate court's opinion tells us that Corbett's conviction was based on the testimony of Biggs, Price, McHugh and Kline and related only to events leading up to Corbett's arrest.  The evidence necessary to convict Corbett was the same evidence used to establish probable cause to arrest him.  Under Currier then, Corbett's conviction conclusively establishes probable cause for his arrest, and therefore bars his claims for false arrest, false imprisonment and malicious prosecution.  See Schertz, 875 F.2d at 682 ("Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.").

In addition to being barred under collateral estoppel, these claims are premature under the rule established in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, a state prisoner convicted of involuntary manslaughter brought a section 1983 action against the state prosecutor and police investigator

alleging an unconstitutional conviction and imprisonment. The
Court barred plaintiff's suit and articulated the following rule:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment,
> or for other harm caused by actions whose
> unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has
> been reversed on direct appeal, expunged
> by executive order, declared invalid by
> a state tribunal authorized to make such
> determination, or called into question by a
> federal court's issuance of a writ of
> habeas corpus.

Id. at 486-87. Under Heck, if success on a section
1983 claim "would necessarily imply the invalidity of his
conviction," a plaintiff may not proceed until that conviction
has been nullified. Id. at 487.

Heck bars Corbett's false arrest, false imprisonment and
malicious prosecution claims under the same rationale requiring
their dismissal under collateral estoppel. The entirety of the
evidence against Corbett consisted of the officers' testimony of
his conduct prior to his arrest. Therefore, a claim that the
officers lacked probable cause would necessarily imply the
invalidity of Corbett's conviction. See Wiley v. City of
Chicago, 361 F.3d 994, 997 (7th Cir. 2004); Gauger v. Hendle, 349
F.3d 354, 361-62 (7th Cir. 2003). If there was no probable
cause for his arrest, then his conviction could not stand — there

was no later-acquired evidence.  Accordingly, because they are barred under both the doctrine of collateral estoppel and the rule of <u>Heck</u>, Counts IV and V are dismissed.

### Count VI — § 1983 Conspiracy

Count VI asserts that Biggs, McHugh, Stefanski, Hilt, Kline, Price, Wollwert, Flanders, Karales, Cohen, McCann, Trent, Judge Wojtecki, Gallagher, as well as "other unknown police officers," engaged in a conspiracy to "cover up" Biggs's allegedly unlawful conduct by filing false reports and giving perjured trial testimony.  Corbett does not identify a particular constitutional or statutory deprivation, but we read this count as alleging a denial of Corbett's right of access to the courts by concealing the true nature of his encounter with Biggs.  <u>See</u> <u>Cefalu v. Vill. of Elk Grove</u>, 211 F.3d 416, 422-23 (7th Cir. 2000); <u>Bell v. City of Milwaukee</u>, 746 F.2d 1205, 1260-63 (7th Cir. 1984).  "[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." <u>Cefalu</u>, 211 F.3d at 423 (citations omitted).

The Seventh Circuit has made clear that a conspiracy to cover up unconstitutional conduct will not result in the denial of access to the courts when the plaintiff witnessed the alleged unlawful conduct and therefore had knowledge of all the pertinent

facts. <u>Id.</u> at 423-24. The following passage from <u>Cefalu</u> is instructive:

> [T]his was not a case in which the plaintiffs lacked the knowledge of the facts necessary to seek redress for their asserted injuries. The key circumstances underlying their claims for wrongful arrest and malicious prosecution were those surrounding their arrests. Those circumstances have from the start been known to the [plaintiffs], as they were face-to-face participants with the police in the entire chain of events that culminated in their arrest. Therefore, even to the extent the evidence suggests that the defendants resolved not to conduct a meaningful investigation, for fear it would hurt them later when the [plaintiffs] filed suit, a jury could not find for the plaintiffs on the cover-up claim because the facts that they needed to recover for their asserted injuries have always been known to them.

<u>Id.</u> at 424 (citations omitted). That is the case here. By his own allegations, Corbett was present on August 14, 2001 and witnessed all of Biggs's allegedly unconstitutional acts. He therefore cannot state a section 1983 claim for conspiracy to cover up that same conduct. Count VI is dismissed.

### **Counts XII and XV — § 1983 Denial of Right to Fair Trial and Conspiracy**

In Count XII, Corbett avers that he was denied his due process right to a fair trial because: Gallagher made improper

remarks during his closing argument; Judge Wojtecki's rulings denied Corbett his right to put on a defense; Karales "committed perjury"; Cohen falsified the trial transcript; and Judge Wojtecki, Gallagher, Karales and McCann agreed to deny Corbett a fair trial. Count XV alleges more of the same — that Judge Wojtecki, McCann, Gallagher, Karales and Cohen conspired to deny Corbett a fair trial.

These claims are barred by Heck. Corbett's assertion that he did not receive a fair trial necessarily puts in question the validity of his conviction. Indeed, similar claims were presented by the plaintiff in Heck — among them, that defendants "knowingly destroyed" exculpatory evidence and caused "an illegal and unlawful voice identification procedure" to be used at plaintiff's trial. See 512 U.S. at 479; see also Evans v. Lopez, 2000 WL 631357, at *5 (N.D. Ill. May 12, 2000) ("Heck also bars any claim that the defendants falsified evidence, withheld evidence or otherwise corrupted the judicial process.") Because any successful claim that Corbett was denied a fair trial would obviously undermine his conviction, Counts XII and XV fail under Heck.

Alternatively, each of the defendants named in Counts XII and XV are insulated from Corbett's claims by absolute immunity. Judge Wojtecki is entitled to judicial immunity because all

claims against him involve acts within his jurisdiction and performed in his judicial capacity. See Stump v. Sparkman, 435 U.S. 349, 356 (1978). The claims against McCann, Gallagher and Karales all involve conduct related to Corbett's criminal prosecution and are therefore preempted by prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir. 1986) (absolute immunity shields prosecutor "even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence"). Immunity also extends to Cohen because the allegation that she falsified a transcript involves a nonmechanical function integral to the judicial process. See Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989). And Corbett cannot overcome these immunities by appending conclusory allegations of conspiracy to his substantive allegations. See John v. Barron, 897 F.2d 1387, 1392 (7th Cir. 1990). Counts XII and XV fail to state a claim.

### Count IX - § 1983 Failure to Train

Count IX is directed at the supervisor defendants — McCann, Wunsch, Martin, Randall, Shaughnessy, Trent and Nolen — in both their individual and official capacities and alleges that each failed to train, supervise and discipline the officer defendants under their supervision. This count is scaled back

significantly from the outset. A section 1983 claim for supervisory liability, whether in an individual or official capacity, requires an underlying constitutional violation by an officer who was subject to the defendant's supervision. See Higgins v. Correctional Medical Servs. of Illinois, Inc., 178 F.3d 508, 513-14 (7th Cir. 1999); Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 596-97 (7th Cir. 1997). Because the only underlying section 1983 claim that survives the present motions is the excessive force claim against Biggs, only Wunsch, Biggs's supervisor, could be liable under a theory of supervisory liability.

A claim against Wunsch in his official capacity is, in essence, a claim against the governmental entity that employs him. See Kentucky v. Graham, 473 U.S. 159 (1985). To state an official capacity claim, then, Corbett must allege that the asserted constitutional violation occurred pursuant to an official policy, custom or practice. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). Policy or practice may be demonstrated in one of three ways: (1) by an express policy that, when enforced, causes a constitutional deprivation; (2) by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage

with the force of law; or (3) by a showing that the
constitutional injury was caused by a person with final
policymaking authority.  See Franklin v. City of Evanston, 384
F.3d 838, 843 (7th Cir. 2004).

Corbett alleges the following:

> [T]he multijurisdictional drug enforcement
> units have a policy of executing search
> warrants with surprise and force.  This
> policy has resulted in injuries to the
> people who are in the area of the execution
> of the search warrants.  Persons who are
> injured are routinely arrested for
> Obstructing a Police Officer, most without
> probable cause.

(Compl., ¶ 60.)  Corbett is proceeding under the first theory of
liability listed above by alleging an express policy that, when
enforced, causes a constitutional injury.  Although Corbett
provides little in the way of factual allegations, he has stated
the basis of liability and the general nature of the alleged
policy.  Under the standard for pleading a municipal policy set
out in McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir.
2000) (a plaintiff need only "allege facts that would give the
City notice of his municipal liability claim"), Corbett has
stated an official capacity claim against Wunsch.

A supervisory official may be also liable in his
individual capacity for a failure to train, see Kitzman-Kelley v.
Warner, 203 F.3d 454, 459 (7th Cir. 2000), but not on a

respondeat superior basis. See Monell, 436 U.S. at 694. For a supervisor to be individually liable, he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. [He] must in other words act either knowingly or with deliberate, reckless indifference." Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988). While a supervisor may be liable even when not directly involved in the constitutional violation, see Wilks v. Young, 897 F.2d 896, 898 (7th Cir. 1990), the misconduct of the subordinate must be affirmatively linked to the action or inaction of the superior. See Rizzo v. Goode, 423 U.S. 362, 371 (1976).

On the individual capacity claim, Corbett alleges the following: "the [supervisors] knew or in the exercise of due diligence should have known that the conduct of the Defendant officers was likely to occur"; "[the supervisors] failed to take any preventive or remedial measures to guard against the conduct of the other Defendant officers"; "had [the supervisors] taken such measures, Plaintiff would not have suffered the deprivations of rights"; and, "[the supervisors'] failure amounted to deliberate indifference, or deliberate misconduct, which directly caused the deprivations suffered by the Plaintiff . . . ." (Compl., ¶ 107.)

It is not clear that these allegations, standing alone, state an individual capacity claim. The allegations are largely legal conclusions, and offer no facts from which to infer that Wunsch had knowledge or reason to anticipate that Biggs would use excessive force against Corbett. However, when we consider Corbett's complaint as a whole, including the policy allegations, he has provided Wunsch sufficient notice of the basis for his claim. Specifically, if the Oswego police department had a policy of executing search warrants with force, an allegation we take as true for present purposes, it is a natural inference that Wunsch, the Oswego police chief, knew of the policy and had reason to believe that, without proper training, the officers under his supervision were likely to use excessive force in executing warrants. Mindful of the more liberal pleading standard applied to *pro se* complaints, Corbett has stated a failure to train claim against Wunsch in his individual capacity. Accordingly, Count IX is dismissed as to all defendants except Wunsch.

### Counts VII, VIII, X, XI, XIII, XIV, XVI and XVII - Respondeat Superior and Indemnification

These counts plead all-encompassing claims for respondeat superior and indemnification against Kendall County, and all of the other local government entities that participate in CPAT, for

the section 1983 and state law tort claims averred in each of the counts discussed above. With respect to the federal claims, a municipality cannot be held liable under section 1983 on a theory of respondeat superior. <u>See</u> <u>Monell</u>, 436 U.S. at 691. As for indemnification under 745 ILCS § 10/9-102, a plaintiff may bring such a claim against a municipality in a section 1983 suit against the municipality's employee. <u>See</u> <u>Wilson v. City of Chicago</u>, 120 F.3d 681, 684 (7th Cir. 1997). But there are no municipality defendants in this case. This of course means that the respondeat superior and indemnification claims on the state law counts must be dismissed as well. Counts VII, VIII, X, XI, XIII, XIV, XVI and XVII are therefore dismissed.

To sum up, Corbett has stated a claim in Counts I, II and III against Biggs and in Count IX against Wunsch in his individual and official capacities. All other claims against all other defendants are dismissed. Because all claims against McHugh, Flanders and Wollwert have been dismissed, their summary judgment motion is denied as moot.

**CONCLUSION**

For the foregoing reasons, the motions to dismiss filed by defendants Price, Hilt, Kline, Flanders, McHugh, Stefanski, Wollwert, McCann, Martin, Randall, Nolen, Trent, Judge Wojtecki, Karales, Gallagher and Cohen are granted. The motions to dismiss

filed by defendants Biggs and Wunsch are granted in part and denied in part. McHugh, Flanders and Wollwert's motion for summary judgment is denied as moot. A status hearing is set for April 20, 2005 at 11:00, and discovery is to proceed forthwith.


DATE:   March 23, 2005


ENTER: _____

John F. Grady, United States District Judge